UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.   14-1867

UNITED STATES OF AMERICA,
          Plaintiff,

          v.

THORO PRODUCTS COMPANY,
          Defendant.

## COMPLAINT

The United States of America, by its undersigned attorneys, by the authority

of the Attorney General of the United States, and at the request of the

Administrator of the United States Environmental Protection Agency ("U.S.

EPA"), alleges that:

## STATEMENT OF THE CASE

1.      This is a civil action for recovery of costs pursuant to Section 107(a)

of the Comprehensive Environmental Response, Compensation and Liability Act

of 1980, 42 U.S.C. § 9607(a), as amended by the Superfund Amendments and

Reauthorization Act of 1986 ("CERCLA"), and for a declaration of Defendant's

liability for all future response costs to be incurred by the United States in

connection with the release or threatened release of hazardous substances into the

environment at and from the Twins Inn Site located in Arvada, Colorado (the "Site" or "Facility").

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over this action pursuant to Sections 107(a) and 113(b) of CERCLA, 42 U.S.C. §§ 9607(a) and 9613(b), and pursuant to 28 U.S.C. §§ 1331 and 1345.

3.     Venue is proper in this district pursuant to Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), and pursuant to 28 U.S.C. § 1391 (b), because the release or threatened release of hazardous substances occurred in this district and because the Site is located in this district.

## DEFENDANT

4.     Thoro Products Company ("Thoro"), a Colorado Corporation, owns part of the Site and owned and operated a facility on the Site at the time of the disposal of hazardous substances there.

## GENERAL ALLEGATIONS

5.     Thoro is the current owner of part of the Site and was the owner and operator of a facility on the Site at the time of "disposal," as that term is defined in section 1004(3) of the Solid Waste Disposal Act, 42 U.S.C. § 6903(3), of hazardous substances at the Site.

6.     From the early 1960s through the late 1990s, Thoro stored and handled chemicals containing hazardous substances on the Site. These chemicals included chorinated solvents such as: trichloroethene (TCE), tetrachloroethene (PCE), 1,1-dichloroethene (1,1-DCE), cis-1,2-dichlorethene (cis-1,2-DCE), vinyl chloride, 1,1,1-trichlorethane (1,1,1-TCA), 1,1-dichloroethane (1,1,-DCA), 1,2-dichloropropane, methylene chloride, toluene, chlorobenzene, and other liquids containing hazardous substances. These are hazardous substances within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14).

7.     Thoro also manufactured bleach and a spot remover and recycled spent solvents at the Site. These operations resulted in the disposal of additional hazardous substances there.

8.     Liquids containing hazardous substances were poured on the ground and down drains and otherwise released into soils, groundwater, and the environment at the Site.

9.     EPA discovered groundwater contamination at the Site on March 13, 1995, while conducting background sampling in connection with a nearby dump site. Well samples at the Site have shown the presence of trichloroethene (TCE), tetrachloroethene (PCE), 1,1-dichloroethene (1,1-DCE), cis-1,2-dichlorethene (cis-1,2-DCE), vinyl chloride, 1,1,1-trichlorethane (1,1,1-TCA), 1,1-dichloroethane

- 3 -

(1,1,-DCA), 1,2-dichloropropane, methylene chloride, and toluene in concentrations above maximum containment levels (MCLs), according to the Safe Drinking Water Act, 42 U.S.C. §§ 300f to 300j – 26, and implementing regulations at 40 CFR Part 141, or Colorado water quality standards Regulation Nos. 41 and 42 (basic standards for ground water).

10.  As a result of these sampling results, EPA supplied bottled water to two households and the Twins Inn Tavern that shared a contaminated drinking water well located approximately one mile downgradient of the Thoro facility. Later, EPA ordered the establishment and maintenance of a protective carbon filter system for the affected drinking water well.

11.  Soil samples at the Site have shown the presence of trichloroethene (TCE), tetrachloroethene (PCE), 1,1-dichloroethene (1,1-DCE), cis-1,2-dichlorethene (cis-1,2-DCE), vinyl chloride, 1,1,1-trichloroethane (1,1,1-TCA), 1,2-dichloropropane, methylene chloride, toluene, and chlorobenzene in concentrations above MCLs.  These are hazardous substances within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14).

12.  On October 22, 1997, the Dow Chemical Company (Dow) entered into an Administrative Order on Consent (AOC) for a Site Investigation.

13.     On March 30, 2001, an AOC went into effect providing that Site property owners would pay for and ensure the operation and maintenance of the carbon filter system and the monitoring of groundwater in the contaminated drinking water well.

14.     On July 11, 2000, Dow entered into an AOC for the performance of a Remedial Investigation and Feasibility Study (RI/FS) for cleaning up the Site.

15.     The Site Investigation was completed in 2004.  Subsequent groundwater sampling, treatability studies and contaminant groundwater modeling, as part of the RI/FS, have shown that natural attenuation processes have reduced the size and toxicity of the groundwater contaminant plume.

16.     On October 31, 2013, this Court entered a consent decree for partial reimbursement of response costs incurred by the United States in connection with the Site.

17.     EPA  has about $1.7 million in unreimbursed costs incurred in connection with the Site.

### CLAIM FOR RELIEF

18.     Paragraphs 1-17 are realleged and incorporated herein by reference.

19.     Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides, in part that:

(1)  the owner and operator of a vessel or a facility,

(2)  any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of, . . .

(4) . . . from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for --

> (A)  all costs of removal or remedial action incurred by the United States Government . . . not inconsistent with the national contingency plan[.]

20.     Section 113(g)(2)(B) of CERCLA, 42, U.S.C. § 9613(g)(2) provides:

. . . In any such action described in this subsection [an action for recovery of costs under Section 107 of CERCLA], the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages.

21.     The Site is a location where hazardous substances have been deposited, stored, disposed of, placed or otherwise come to be located, and thus is

a "facility" within the meaning of Sections 107(a)(2) and (3) and 101(9), 42 U.S.C.

§§ 9607(a)(2) and (3) and 9601(9).

22.     There were "releases" and "threatened releases" of hazardous

substances, " within the meaning of Section 101(22) of CERCLA, 42 U.S.C. §

9601(22), at the Site.

23.     The materials disposed and released at the Site are "hazardous

substances" within the meaning of Section 101(14) of CERCLA, 42 U.S.C.

§ 9601(14).

24.     Defendant Thoro is a "person" within the meaning of Section

101(21) of CERCLA, 42 U.S.C. § 9601(21).

25.     Defendant Thoro is the owner of the facility within the meaning of

Section 107(a)(1) of CERCLA, 42 U.S.C. §9607(a)(1) and was the owner and

operator of the facility within the meaning of Section 107(a)(2) of CERCLA, 42

U.S.C. § 9607(a)(2), and, therefore, is liable for all costs of removal and remedial

actions incurred and to be incurred not inconsistent with the National Oil and

Hazardous Substances Pollution Contingency Plan ("NCP"), 40 C.F.R. Part 300.

26.     In response to the releases at the Site, EPA has taken response

actions at or in connection with the Site under authority granted in Section 104 of

CERCLA, 42 U.S.C. § 9604.

27.     As a result of EPA's response actions, the United States has incurred response costs related to the release or threatened release of hazardous substances at the Site, and the United States has and will continue to incur such costs, as defined in Section 101(25) of CERCLA, 42 U.S.C. § 9601(25).

28.     The response costs incurred by the United States at the Site were not inconsistent with the National Contingency Plan, 40 C.F.R. Part 300.

29.     The defendant is jointly and severally liable to the United States for all response costs incurred and to be incurred by the United States in connection with the Site, including enforcement costs.

30.     The defendant is liable to the United States pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), for interest on those response costs for which a demand for payment has been made.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, United States of America, requests that this Court grant the following relief:

1.     Enter judgment in favor of the United States and against the defendant, jointly and severally, for all unreimbursed costs incurred by the United States, including prejudgment interest, for response actions in connection with the Site;

- 8 -

2.      Enter a declaratory judgment, pursuant to Section 113(g)(2) of CERCLA, 42

U.S.C. § 9613(g)(2), that the defendant is liable,  jointly and severally, for all

future costs incurred by the United States for response actions in connection with

the Site;

3.      Award the United States the costs of this action, including its costs of

attorney time; and,

4.      Grant such other and further relief as the Court deems appropriate.

Respectfully submitted,

U.S. DEPARTMENT OF JUSTICE
ENVIRONMENT AND NATURAL
RESOURCES DIVISION

Nathaniel Douglas
Deputy Section Chief
Environmental Enforcement Section

/s/ Elliot Rockler
_____
Elliot M. Rockler
Cara Mroczek
Trial Attorneys
Environmental Enforcement Section
P.O. Box 7611
Washington, DC 20044
(202) 514-2653