**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

AUG 1 4 2014

**JEFFREY P. COLWELL**
CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

UNITED STATES OF AMERICA,          )
                                   )
        Plaintiff,                 )
                                   )  Civil Action No. ~~XX-X1867~~
v.                                 )
                                   )     14-cv-01867-REB-KLM
THORO PRODUCTS COMPANY             )
                                   )
        Defendant.                 )
                                   )
                                   )

## CONSENT DECREE

36758-0002/LEGAL29581397.3

# TABLE OF CONTENTS

Page

I. BACKGROUND .................................................................................................... 1
II. JURISDICTION .................................................................................................... 3
III. PARTIES BOUND ................................................................................................ 3
IV. DEFINITIONS...................................................................................................... 4
V. STATEMENT OF PURPOSE ............................................................................... 7
VI. PAYMENT OF RESPONSE COSTS.................................................................... 7
VII. FAILURE TO COMPLY WITH CONSENT DECREE ....................................... 8
VIII. RELEASE OF NOTICE OF FEDERAL LIEN.................................................... 10
IX. COVENANT NOT TO SUE BY PLAINTIFF ..................................................... 10
X. RESERVATION OF RIGHTS BY UNITED STATES ........................................ 11
XI. COVENANT NOT TO SUE BY SETTLING DEFENDANT.............................. 13
XII. EFFECT OF SETTLEMENT/CONTRIBUTION PROTECTION ....................... 14
XIII. NOTICE TO SUCCESSORS-IN-TITLE ............................................................ 15
XIV. ACCESS AND INSTITUTIONAL CONTROLS ................................................ 17
XV. RETENTION OF RECORDS AND CERTIFICATION....................................... 19
XVI. DISPUTE RESOLUTION ................................................................................... 21
XVII. NOTICES AND SUBMISSIONS........................................................................ 23
XVIII. RETENTION OF JURISDICTION...................................................................... 24
XIX. INTEGRATION/APPENDICES .......................................................................... 25
XX. LODGING AND OPPORTUNITY FOR PUBLIC COMMENT ......................... 25
XXI. SIGNATORIES/SERVICE.................................................................................. 25
XXII. FINAL JUDGMENT ........................................................................................... 26

APPENDICES

A - Site Map

B - Financial Information

C - Insurance Information

D - Environmental Covenant

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

UNITED STATES OF AMERICA,   )
                            )
        Plaintiff,          )
                            )   Civil Action No. _____
v.                          )
                            )
THORO PRODUCTS COMPANY      )
                            )
        Defendant.          )
                            )
                            )

## CONSENT DECREE

### I.    BACKGROUND

A.  The United States of America ("United States") filed a complaint in this matter

pursuant to Sections 106 and 107 of the Comprehensive Environmental Response,

Compensation, and Liability Act of 1980, 42 U.S.C. §§ 9606 and 9607, as amended

("CERCLA"), seeking reimbursement of response costs incurred or to be incurred by the United

States Environmental Protection Agency ("EPA") and the United States Department of Justice

("DOJ") for response actions taken or to be taken at or in connection with the release or

threatened release of hazardous substances at the Twins Inn Superfund Site in Arvada, Jefferson

County, Colorado ("the Site").

B.  In accordance with the NCP and Section 121(f)(1)(F) of CERCLA, 42 U.S.C. §

9621(f)(1)(F), EPA has notified the State of Colorado, (the State) of negotiations with potentially

responsible parties regarding response activities at the Site and this Consent Decree.

C.  Settling Defendant, by entering into this Consent Decree, does not admit any liability

to the United States arising out of the transactions or occurrences alleged in the Complaint, nor

1

does it acknowledge that the release or threatened release of hazardous substances at or from the Site constitutes an imminent and substantial endangerment to the public health or welfare or the environment.

D.  Settling Defendant operated a solvent and inorganic chemical plant at the Site using tanks and equipment that it owned on the Property (as defined below) and tanks and equipment that it owned and operated on land adjacent to the Property.  EPA has incurred and will incur response costs in the future to address the release of chemical products and residuals from the tanks and equipment owned and operated by Settling Defendant at the Site.

E.  In response to the release or threatened release of hazardous substances at or from the Site, EPA undertook response actions at the Site pursuant to Section 104 of CERCLA, 42 U.S.C. § 9604, and may undertake additional response actions in the future.  Hazardous substances, including 1,1,1-trichloroethane (1,1,1-TCA), trichloroethene (TCE), and tetrachloroethene (PCE), were detected in soils and groundwater at the Site.  A carbon filtration water treatment system was installed to treat the shallow groundwater and EPA initiated regular water sampling to ensure that the drinking water met appropriate standards.

F.  In performing response actions at the Site, EPA has incurred response costs and will incur additional response costs in the future.

G.  The United States alleges that Settling Defendant is a responsible party pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), and is jointly and severally liable for response costs incurred and to be incurred at the Site.

H.  The United States has reviewed the Financial Information and Insurance Information submitted by Settling Defendant to determine whether Settling Defendant is financially able to pay response costs incurred and to be incurred at the Site.  Based upon this Financial Information

2

and Insurance Information, the United States has determined that Settling Defendant has limited financial ability to pay for response costs incurred and to be incurred at the Site.

I. The United States and Settling Defendant agree, and this Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith, that settlement of this matter will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

WHEREAS Settling Defendant Thoro Products Company, does not admit any liability to Plaintiff arising out of the transactions or occurrences alleged in the complaint.

NOW, THEREFORE, with the consent of the Parties to this Decree, it is ORDERED, ADJUDGED, AND DECREED:

## II.   JURISDICTION

1. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345 and 42 U.S.C. §§ 9606, 9607 and 9613(b) and also has personal jurisdiction over Settling Defendant. Solely for the purposes of this Consent Decree and the underlying complaint, Settling Defendant waives all objections and defenses that it may have to jurisdiction of the Court or to venue in this District. Settling Defendant shall not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III.   PARTIES BOUND

2. This Consent Decree is binding upon the United States and upon Settling Defendant and its heirs, successors and assigns. Any change in ownership or corporate or other legal status, including, but not limited to, any transfer of assets or real or personal property, shall in no way alter the status or responsibilities of Settling Defendant under this Consent Decree.

3

## IV.   DEFINITIONS

3.  Unless otherwise expressly provided in this Consent Decree, terms used in this

Consent Decree that are defined in CERCLA or in regulations promulgated under CERCLA

shall have the meanings assigned to them in CERCLA or in such regulations.  Whenever terms

listed below are used in this Consent Decree or in any appendix attached hereto, the following

definitions shall apply:

a.  "CERCLA" shall mean the Comprehensive Environmental Response, Compensation,

and Liability Act of 1980, as amended, 42 U.S.C. § 9601, et seq.

b.  "Consent Decree" shall mean this Consent Decree and all appendices attached hereto.

In the event of conflict between this Consent Decree and any appendix, this Consent Decree shall

control.

c.  "Day" shall mean a calendar day.  In computing any period of time under this Consent

Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall

run until the close of business of the next working day.

d.  "DOJ" shall mean the United States Department of Justice and any successor

departments, agencies or instrumentalities of the United States.

e.  "EPA" shall mean the United States Environmental Protection Agency and any

successor departments, agencies or instrumentalities of the United States.

f.  "EPA Hazardous Substance Superfund" shall mean the Hazardous Substance

Superfund established by the Internal Revenue Code, 26 U.S.C. § 9507.

g.  "Existing Contamination and Known Conditions" shall mean the conditions at the Site

known to EPA as of the date of lodging of this Consent Decree with the Court, as documented by

4

any data, information or documents referenced within the Removal Action Documents and any other data, information and documents compiled by EPA for the Administrative Record for the Site.

h. "Financial Information" shall mean those financial documents identified in Appendix B.

i. "Insurance Information" shall mean those insurance documents identified in Appendix C.

j. "Interest" shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a). The applicable rate of interest shall be the rate in effect at the time the interest accrues. The rate of interest is subject to change on October 1 of each year.

k. "Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral or an upper or lower case letter.

l. "Parties" shall mean the United States and the Settling Defendant.

m. "Plaintiff" shall mean the United States.

n. "Property" shall mean that portion of the Site that is owned by Settling Defendant at 6611 West 58th Place, Arvada, Jefferson County, Colorado, and is designated on the map attached as Appendix A as "the Thoro Property."

o. "RCRA" shall mean the Solid Waste Disposal Act, 42 U.S.C. § 6901, et seq. (also known as the Resource Conservation and Recovery Act).

p. "Removal Action Documents" shall mean: (1) the Field Screening Investigation Report, April 22, 1998; (2) the Risk Assessment Report (Final) dated September 1999; (3) the

December 18, 2008 Action Memoranda for the Twins Inn Site, and any addenda or amendments thereto; (4) the August 17, 2000 Administrative Order on Consent for Remedial Investigation/Feasibility Study between EPA and the Dow Chemical Company and any addenda or amendments thereto; (5) the August 2007 Engineering Evaluation/Cost Analysis for the Twins Inn Site (f/k/a the Feasibility Study) and any addenda or amendments thereto, and (6) the Amended Action Memorandum dated November 9, 2011, which selects as the remedy the preferred alternative set forth in the Final EE/CA Report approved by EPA on January 7, 2012.

q. "Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

r. "Settling Defendant" shall mean Thoro Products Company and its successors and assigns.

s. "Site" shall mean the Twins Inn Superfund site located at West 58th Avenue and Nolan Street in the City of Arvada in Jefferson County, Colorado and extending east southeastward across Sheridan Boulevard. The general location of the Site is shown on the map included in Appendix A.

t. "Transfer" shall mean each sale, assignment, transfer or exchange by Settling Defendant (or its successors or heirs) of the Property, or any portion thereof, where title to the Property (or any portion or interest thereof) (i) is transferred and Fair Market Value is received in consideration, or (ii) is transferred involuntarily by operation of law, including foreclosure and its equivalents following default on the indebtedness secured, in whole or in part, by the Property, including, but not limited to, a deed or other assignment in lieu of foreclosure.

u. "United States" shall mean the United States of America, including its departments, agencies and instrumentalities.

6

## V.   STATEMENT OF PURPOSE

4. By entering into this Consent Decree, the mutual objectives of the Parties are for Settling Defendant to make a cash payment and implement institutional controls to resolve its alleged civil liability for the Site under Sections 106 and 107 of CERCLA, 42 U.S.C. §§ 9606 and 9607, as provided in the Covenant Not to Sue by Plaintiff in Section IX and subject to the Reservations of Rights by United States in Section X.

## VI.   PAYMENT OF RESPONSE COSTS

5. Within 30 days after entry of this Consent Decree, Settling Defendant shall pay to the EPA $400,000.

6. Payment shall be made by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice account in accordance with EFT procedures provided to Settling Defendant by the Financial Litigation Unit of the U.S. Attorney's Office in the District of Colorado following lodging of the Consent Decree.

7. At the time of payment, Settling Defendant shall also send notice that payment has been made to EPA and DOJ in accordance with Section XIII (Notices and Submissions), by email to acctsreceivable.cinwd@epa.gov, and to:

> EPA Cincinnati Finance Office
> 26 Martin Luther King Drive
> Cincinnati, Ohio 45268
>
> and
>
> Chief Financial Officer (8TMS-F)
> Financial Management Program
> U.S. Environmental Protection Agency
> 1595 Wynkoop Street
> Denver, CO 80202-1129

7

Such notice shall reference the EPA Region and Site/Spill ID Number 08-4F, DOJ Case Number 90-11-2-08744, and the Civil Action Number.

8. The total amount to be paid pursuant to Paragraph 5 shall be deposited by EPA in the Twins Inn Special Account within the EPA Hazardous Substance Superfund to be retained and used to conduct or finance response actions at or in connection with the Site or to be transferred by EPA to the EPA Hazardous Substance Superfund.

## VII.    FAILURE TO COMPLY WITH CONSENT DECREE

9. <u>Interest on Late Payments</u>. If Settling Defendant fails to make any payment required by Paragraph 5 by the required due date, Interest shall continue to accrue on the unpaid balance through the date of payment.

10. <u>Stipulated Penalty</u>.

a. If any amounts due under Paragraph 5 are not paid by the required date, or if Settling Defendant refuses to allow access, as required under Section XIV, following receipt of EPA's written notice of request for access in accordance with Paragraph 27, or fails to record the institutional controls as required under Section XIV, or fails to comply with any other provision of this Consent Decree, subject to Section XVI (Dispute Resolution) below, Settling Defendant shall be in violation of this Consent Decree and shall pay, as a stipulated penalty, in addition to the Interest required by Paragraph 9, $500 per violation per day that such payment is late or that such refusal to provide access or record the institutional controls or otherwise comply with the Consent Decree continues.

b. Stipulated penalties are due and payable within 30 days of the date of the demand for payment of the penalties by EPA. All payments to EPA under this Paragraph shall be identified as "stipulated penalties" and shall be made by certified or cashier's check made payable to "EPA

8

Hazardous Substance Superfund." The check, or a letter accompanying the check, shall

reference the name and address of Settling Defendant, the Site name, the EPA Region and

Site/Spill ID Number #08-4F, DOJ Case Number 90-11-2-08744, and the Civil Action Number.

Settling Defendant shall send the check (and any accompanying letter) to:

| | |
|---|---|
| Via Regular Mail: | U.S. Environmental Protection Agency<br>Fines and Penalties<br>Cincinnati Finance Center<br>P.O. Box 979077<br>St. Louis, MO 63197-9000 |
| Via Overnight Delivery: | U.S. Bank<br>Government Lockbox 979077<br>U.S. EPA Fines and Penalties<br>1005 Convention Plaza<br>SL-MO-C2-GL<br>St. Louis, MO 63101 |
| Via Wire Transfers: | Federal Reserve Bank of New York<br>ABA: 021030004<br>Account Number: 68010727<br>Field tag 4200 of the Fedwire message should read:<br>"D68010727 Environmental Protection Agency" |

c. At the time of each payment, Settling Defendant shall send notice that payment has

been made to EPA and DOJ in accordance with Paragraph 7.

d. Penalties shall accrue as provided in this Paragraph regardless of whether EPA has

notified Settling Defendant of the violation or made a demand for payment, but need only be

paid upon demand. All penalties shall begin to accrue on the day after payment or performance

is due or the day a violation occurs, and shall continue to accrue through the date of payment, or

the date on which Settling Defendant provides written notice of its grant of access, or the date on

which Settling Defendant records the institutional controls, or the date on which Settling

Defendant corrects the noncompliance with this Consent Decree. Nothing in this Consent

Decree shall prevent the simultaneous accrual of separate penalties for separate violations of this

9

Consent Decree.

11.  If the United States brings an action to enforce this Consent Decree, Settling Defendant shall reimburse the United States for all costs of such action, including but not limited to costs of attorney time.

12.  Payments made under this Section shall be in addition to any other remedies or sanctions available to Plaintiff by virtue of Settling Defendant's failure to comply with the requirements of this Consent Decree.

13.  Notwithstanding any other provision of this Section, the United States may, in its unreviewable discretion, waive payment of any portion of the stipulated penalties that have accrued pursuant to this Consent Decree.  Payment of stipulated penalties shall not excuse Settling Defendant from payment as required by Section VI or from performance of any other requirements of this Consent Decree.

## VIII.  <u>RELEASE OF NOTICE OF FEDERAL LIEN</u>

14.  Within 30 days after EPA receives the payment required by Paragraph 5 of this Consent Decree, EPA shall file a Release of Notice of Federal Lien in the Recorder's Office, Jefferson County, State of Colorado.  The Release of Notice of Federal Lien shall release the Notice of Federal Lien filed on July 28, 1999, Reception No. F0916587, and shall not release any other lien or encumbrance which may exist upon the Property.  Settling Defendant agrees that this release of lien is conditioned upon the Settling Defendant's satisfactory compliance with Paragraph 5 and Paragraph 27 (c) of this Consent Decree.

## IX.  <u>COVENANT NOT TO SUE BY PLAINTIFF</u>

15.  Except as specifically provided in Section X (Reservation of Rights by United States), the United States covenants not to sue or to take administrative action against Settling

10

Defendant pursuant to Sections 106 and 107(a) of CERCLA, 42 U.S.C. §§ 9606 and 9607(a), with regard to the Site.  With respect to present and future liability, this covenant not to sue shall take effect upon receipt by EPA of all amounts required by Section VI (Payment of Response Costs) and recording of the Institutional Controls as specified in Section XIV.  This covenant not to sue is also conditioned upon the veracity of the Financial Information and the Insurance Information provided to EPA by Settling Defendant.  If the Financial Information or the Insurance Information certification made by Settling Defendant in accordance with Paragraph 32 is subsequently determined by EPA to be false, or if Settling Defendant withheld material and significant Financial Information or Insurance Information, Settling Defendant shall forfeit all payments made pursuant to this Consent Decree and this covenant not to sue and the contribution protection in Paragraph 22 shall be null and void.  Such forfeiture shall not constitute liquidated damages and shall not in any way foreclose the United States' right to pursue any other causes of action arising from Settling Defendant's false or materially inaccurate certification.  These covenants not to sue and the contribution protection provisions of Paragraph 22 shall also apply to Settling Defendant's officers, directors, successors, and assigns, but only to the extent that the alleged liability of the officer, director, successor, or assign is based on its status and in its capacity as an officer, director, successor or assign of Settling Defendant, and not to the extent that the alleged liability arose independently of the alleged liability of Settling Defendant.  These covenants not to sue do not extend to any other person.

## X.   RESERVATION OF RIGHTS BY UNITED STATES

16.  The United States reserves, and this Consent Decree is without prejudice to, all rights against Settling Defendant with respect to all matters not expressly included within the Covenant Not to Sue by United States in Paragraph 15.  Notwithstanding any other provision of this

36758-0002/LEGAL29581397.3

Consent Decree, the United States reserves all rights against Settling Defendant with respect to:

a. liability for failure of Settling Defendant to meet a requirement of this Consent Decree;

b. criminal liability;

c. liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments except any natural resource damages claimed by EPA at the Site;

d. liability based on the ownership of the Site by Settling Defendant exclusive of Existing Contamination and Known Conditions when such ownership commences after signature of this Consent Decree by Settling Defendant;

e. liability based on the operation of the Site by Settling Defendant exclusive of Existing Contamination and Known Conditions, when such operation commences after the lodging of this Consent Decree with the Court and does not arise solely from Settling Defendant's performance of obligations required by this Consent Decree;

f. liability based on Settling Defendant's transportation, treatment, storage, or disposal, or the arrangement for the transportation, treatment, storage, or disposal of a hazardous substance or a solid waste to the Site unless authorized by law, exclusive of Existing Contamination and Known Conditions, after signature of this Consent Decree by Settling Defendant;

g. liability based upon conditions at the Site unknown to EPA at the time of lodging of this Consent Decree with the Court, exclusive of Existing Contamination and Known Conditions; and

h. liability arising from the past, present, or future disposal, release or threat of release of a hazardous substance, pollutant, or contaminant outside of the Site.

36758-0002/LEGAL29581397.3

17. Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, the right to reinstitute or reopen this action, or to commence a new action seeking relief other than as provided in this Consent Decree, if the Financial Information or the Insurance Information provided by Settling Defendant, or the financial, insurance, or indemnity certification made by Settling Defendant in Paragraph 32 is false, or if Settling Defendant withheld material and significant Financial Information or Insurance Information.

## XI.   COVENANT NOT TO SUE BY SETTLING DEFENDANT

18. Settling Defendant covenants not to sue and agrees not to assert any claims or causes of action against the United States, or its contractors or employees, with respect to the Site or this Consent Decree, including, but not limited to:

a. any direct or indirect claim for reimbursement from the Hazardous Substance Superfund based on Sections 106(b)(2), 107, 111, 112, or 113 of CERCLA, 42 U.S.C. §§ 9606(b)(2), 9607, 9611, 9612, or 9613, or any other provision of law;

b. any claim arising out of response actions at or in connection with the Site, including any claim under the United States Constitution, the Colorado Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended, or at common law; or

c. any claim against the United States pursuant to Sections 107 and 113 of CERCLA, 42 U.S.C. §§ 9607 and 9613, relating to the Site.

These covenants not to sue shall not apply in the event the United States brings a cause of action or issues an order pursuant to the reservations set forth in Paragraph 16 (c) - (h), but only to the

13

extent that Settling Defendant's claims arise from the same response action or response costs that the United States is seeking pursuant to the applicable reservation.

19. Nothing in this Consent Decree shall be deemed to constitute approval or preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d).

20. Settling Defendant agrees not to assert any claims and to waive all claims or causes of action that it may have for response costs relating to the Site against any other person who is a potentially responsible party under CERCLA at the Site. This waiver shall not apply to any other claims or causes of action that Settling Defendant has or may have against any third-party under a contract of indemnification or insurance in connection with the Site. This waiver also shall not apply with respect to any defense, claim, or cause of action that Settling Defendant may have against any person if such person asserts a claim or cause of action relating to the Site against Settling Defendant.

## XII.   EFFECT OF SETTLEMENT/CONTRIBUTION PROTECTION

21. Except as provided in Paragraph 20, nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree. Except as provided in Paragraph 20, the Parties expressly reserve any and all rights (including, but not limited to, any right to contribution), defenses, claims, demands, and causes of action which they may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a Party hereto. The Parties agree that the contribution protection provided in Paragraph 22 below shall not apply to any claims or causes of action (including claims for contribution under CERCLA) that Settling Defendant has or may

14

have against any third-party providing a contract of indemnification or insurance.

22. The Parties agree, and by entering this Consent Decree this Court finds, that Settling Defendant is entitled, as of the date of entry of this Consent Decree, to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), for "matters addressed" in this Consent Decree. The "matters addressed" in this Consent Decree are all payments made by Settling Defendant to the United States related to the Site and all response actions taken or to be taken and all response costs incurred or to be incurred, at or in connection with, the Site, by the United States or any other person. The "matters addressed" in this Consent Decree do not include those response costs or response actions as to which the United States has reserved its rights under this Consent Decree (except for claims for failure to comply with this Decree), in the event that the United States asserts rights against Settling Defendant coming within the scope of such reservations.

23. In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, recovery of response costs, or other relief relating to the Site, Settling Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the Covenant Not to Sue by Plaintiff set forth in Section IX.

## XIII.  NOTICE TO SUCCESSORS-IN-TITLE

24. With respect to any property owned or controlled by Settling Defendant that is located within the Site, within 15 days after the entry of this Consent Decree, Settling Defendant

36758-0002/LEGAL29581397.3

shall file with the Recorder's Office, Jefferson County, State of Colorado, the Environmental

Covenant in the same form as attached hereto as Appendix D, which shall provide notice to all

successors-in-title that the property is part of the Site, that EPA selected a remedy for the Site in

an Amended Action Memorandum on November 9, 2011, and that Settling Defendant has

entered into a Consent Decree requiring implementation of the institutional controls on the

property.  Such notice shall identify the United States District Court in which this Consent

Decree with Settling Defendant was filed, the name and civil action number of the case, and the

date the Consent Decree was entered by the Court.  Settling Defendant shall provide EPA with a

certified copy of the recorded Environmental Covenant within 30 days of recording.

    25.  At least 30 days prior to the conveyance of any interest in property located within the

Site including, but not limited to, fee interests, leasehold interests, and mortgage interests,

Settling Defendant shall give the grantee written notice of (i) this Consent Decree, (ii) any

instrument, including this Consent Decree, by which an interest has been conveyed that confers a

right of access to the Site to the United States and the State, pursuant to Section XIV (Access and

Institutional Controls), and (iii) any instrument by which an interest in real property has been

conveyed that confers a right to enforce restrictions on the use of such property (hereinafter

referred to as "environmental use restrictions") pursuant to Section XIV (Access and Institutional

Controls).  At least 30 days prior to such conveyance, Settling Defendant shall also give written

notice to EPA of the proposed conveyance, including the name and address of the grantee, and

the date on which notice of the Consent Decree and the environmental use restrictions were

given to the grantee.

    26.  In the event of any such conveyance, Settling Defendant shall inform the grantee

that, by accepting title to the property interest conveyed, the grantee shall be obligated to provide

16

access and abide by the institutional controls, pursuant to Section XIV (Access and Institutional

Controls) of this Consent Decree and the Environmental Covenant filed with the Jefferson

County Recorders Office. In no event shall any conveyance release or otherwise affect the

liability of Settling Defendant to comply with all provisions of this Consent Decree, including,

but not limited to, its obligation to provide or secure access and institutional controls, as well as

to abide by such institutional controls, pursuant to Section XIV (Access and Institutional

Controls) of this Consent Decree, absent the prior written consent of EPA.

## XIV.  ACCESS AND INSTITUTIONAL CONTROLS

27. Consistent with Sections 104 and 122(g)(8)(c) of CERCLA, 42 U.S.C. 9604 and

9622(g)(8)(c), and the Removal Action Documents, Settling Defendant shall provide information

and access as follows:

a. commencing from the date of lodging of this Consent Decree, provide the United

States, the State and their representatives, including EPA and its contractors, with access at all

reasonable times to the Property, for the purpose of conducting the removal actions to be

performed at the Site, as identified in the Removal Action Documents, including, but not limited

to, the following activities:

(1) Monitoring, investigation, removal, remedial or other activities at the Site;

(2) Verifying any data or information submitted to the United States or the State;

(3) Conducting investigations relating to contamination at or near the Site;

(4) Obtaining samples, not including soil samples from the soil within Thoro's building;

(5) Assessing the need for, planning, or implementing additional response actions at or

near the Site;

(6) Inspecting and copying records, operating logs, contracts, or other documents

17

maintained or generated by Settling Defendant or its agents;

(7)  Assessing Settling Defendant's compliance with this Consent Decree; and

(8)  Determining whether the Site or other property is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted, by or pursuant to this Consent Decree.

As applicable, the United States and its representatives, including EPA and its contractors, shall provide Settling Defendant advance written notice, which may be by email, in accordance with Section XVII (Notices and Submissions), describing the proposed action for which the United States and its representatives seek access to the Property, which notice the United States and its representatives shall ensure Settling Defendant receives at least 72 hours prior to access to the Property. Such notice shall not be required to the extent that EPA acts under its access authority under CERCLA Section 104 where there may be an imminent hazard.

b.  Commencing on the date of lodging of this Consent Decree, refrain from using the Property in any manner that would interfere with or adversely affect the implementation, integrity or protectiveness of the removal actions to be performed at the Site, as identified in the Removal Action Documents; and

c.  Within 15 days of entry of this Consent Decree, execute and record in the Recorder's Office of Jefferson County, State of Colorado the Environmental Covenant attached as "Appendix D," which terms have been negotiated and agreed to by Settling Defendant and EPA. Within 30 days of recording the Environmental Covenant, Settling Defendant shall provide EPA with a certified copy of the original recorded Environmental Covenant showing the clerk's recording stamps.

28.  If EPA determines that land/water use restrictions in the form of state or local laws,

18

regulations, ordinances, zoning restrictions, or other governmental controls are needed at or in connection with the Site,  Settling Defendant shall cooperate with EPA's efforts to secure and ensure compliance with such governmental controls.

29.  Notwithstanding any provision of this Consent Decree, the United States retains all of its access authorities and rights, as well as all of its rights to require land/water use restrictions, including enforcement authorities related thereto, under CERCLA, RCRA, and any other applicable statute or regulations.

## XV.   RETENTION OF RECORDS AND CERTIFICATION

30.  Until 10 years after the entry of this Consent Decree, Settling Defendant shall preserve and retain all records now in its possession or control, or which come into its possession or control, that relate in any manner to response actions taken at the Site or the liability of any person under CERCLA with respect to the Site, regardless of any corporate retention policy to the contrary.

31.  After the conclusion of the document retention period in the preceding paragraph, Settling Defendant shall notify EPA and DOJ and the State at least 90 days prior to the destruction of any such records, and, upon request by EPA or DOJ or the State, Settling Defendant shall deliver any such records to EPA or the State.  Settling Defendant may assert that certain records are privileged under the attorney-client privilege or any other privilege recognized by federal law.  If Settling Defendant asserts such a privilege, it shall provide the Plaintiff and/or the State with the following:

> (1)  the title of the record;
>
> (2)  the date of the record;
>
> (3)  the name, title, affiliation (e.g., company or firm), and address of the

19

author of the record;

(4) the name and title of each addressee and recipient;

(5) a description of the subject of the record; and

(6) the privilege asserted.

If a claim of privilege applies only to a portion of a record, the record shall be provided to the United States in redacted form to mask the privileged portion only. Settling Defendant shall retain all records that it claims to be privileged until the United States has had a reasonable opportunity to dispute the privilege claim and any such dispute has been resolved in Settling Defendant's favor. However, no records created or generated pursuant to the requirements of this or any other settlement with the EPA pertaining to the Site shall be withheld on the grounds that they are privileged.

32. Settling Defendant hereby certifies that, to the best of its knowledge and belief, after thorough inquiry, it has:

a. Not altered, mutilated, discarded, destroyed or otherwise disposed of any records, reports, or information relating to its potential liability regarding the Site since notification of potential liability by the United States or the State or the filing of suit against it regarding the Site, and that it has fully complied with any and all EPA requests for information regarding the Site and Settling Defendant's financial circumstances, including but not limited to insurance and indemnity information, pursuant to Sections 104(e) and 122(e) of CERCLA, 42 .U.S.C. §§ 9604(e) and 9622(e), and Section 3007 of RCRA, 42 U.S.C. § 6927;

b. submitted to EPA financial information that fairly, accurately, and materially sets forth its financial circumstances, and that those circumstances have not materially changed between the time the financial information was submitted to EPA and the time Settling

20

Defendant executes this Consent Decree; and

c. fully disclosed any information regarding the existence of any insurance policies or indemnity agreements that may cover claims relating to cleanup of the Site and submitted to EPA upon request such insurance policies, indemnity agreements, and information.

## XVI.  DISPUTE RESOLUTION

33.  Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures described in this Section shall be the exclusive mechanism to resolve disputes arising between EPA and Settling Defendant arising under or with respect to this Consent Decree.  However, the procedures set forth in this Section shall not apply to actions by either party to enforce obligations of the other party that have not been disputed in accordance with this Section.

34.  Formal dispute resolution for disputes pertaining to the selection or adequacy of any response action and all other disputes that are accorded review on the administrative record under applicable principles of administrative law shall be conducted pursuant to the procedures set forth in this Section.  For purposes of this Section, the adequacy of any response action includes, without limitation: the adequacy or appropriateness of plans, procedures to implement plans, or any other items requiring approval by EPA under this Consent Decree; and the adequacy of the performance of response actions taken pursuant to this Consent Decree.

35.  Informal Dispute Resolution.  Any dispute which arises under or with respect to this Consent Decree shall in the first instance be the subject of informal negotiations between the parties to the dispute.  The period for informal negotiations shall not exceed 30 days from the time the dispute arises, unless it is modified by written agreement of the Parties to the dispute. The dispute shall be considered to have arisen upon receipt by EPA (in the case of a dispute

36758-0002/LEGAL29581397.3

initiated by the Settling Defendant), or by Settling Defendant (in the case of a dispute initiated by

EPA) of a written Notice of Dispute.

36. <u>Formal Dispute Resolution</u>.

a.      In the event that the Parties cannot resolve a dispute by informal negotiations

under the preceding Paragraph, then the position advanced by EPA shall be considered binding

unless, within 21 days after the conclusion of the informal negotiation period, Settling Defendant

invokes the formal dispute resolution procedures of this Section by serving on the United States

through the Assistant Regional Administrator for the Office of Environmental Compliance and

Environmental Justice, EPA Region 8, a written Statement of Position on the matter in dispute,

including, but not limited to, any factual data, analysis or opinion supporting that position and

any supporting documentation relied upon by Settling Defendant.

b.      Within 21 days after receipt of Settling Defendant's Statement of Position, EPA

will serve on Settling Defendant its Statement of Position, including, but not limited to, any

factual data, analysis, or opinion supporting that position and all supporting documentation relied

upon by EPA.  Within 14 days after receipt of EPA's Statement of Position, Settling Defendant

may submit a Reply.

c.      Following receipt of all statements of position submitted pursuant to Paragraphs a.

and b., an EPA Program Director or higher at EPA Region 8, will issue a final decision resolving

the dispute.  The Director's decision shall be binding on Settling Defendant unless, within 10

days of receipt of the decision, Settling Defendant files with the Court and serves on the United

States a motion for judicial review of the decision setting forth the matter in dispute, the efforts

made by the Parties to resolve it, the relief requested, and the schedule, if any, within which the

dispute must be resolved to ensure orderly implementation of the Consent Decree.  The United

22

States may file a response to Settling Defendant's motion.  Judicial review of any dispute under this Consent Decree (except for disputes regarding EPA's final determination made pursuant to Section IX) shall be governed by applicable principles of law.

37.  The invocation of formal dispute resolution procedures under this Section shall not extend, postpone or affect in any way any obligation of Settling Defendant under this Consent Decree not directly in dispute, unless the United States or the Court agrees otherwise.  Stipulated penalties with respect to the disputed matter shall continue to accrue but payment shall be stayed pending resolution of the dispute.  Notwithstanding the stay of payment, stipulated penalties shall accrue from the first day of noncompliance with any applicable provision of this Consent Decree. In the event that Settling Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Paragraph 10. In the event Settling Defendant prevails on the disputed issue, any accrued stipulated penalties shall be withdrawn.

## XVII.  NOTICES AND SUBMISSIONS

38.  Whenever, under the terms of this Consent Decree, notice is required to be given or a document is required to be sent by one party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing.  Written notice as specified in this Section includes email and shall constitute complete satisfaction of any written notice requirement of the Consent Decree with respect to the United States, EPA, DOJ, and Settling Defendant, respectively.

As to the United States:

As to DOJ:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice (DJ # 90-11-2-08744)
P.O. Box 7611
Washington, D.C.  20044-7611

23

36758-0002/LEGAL29581397.3

<u>As to EPA:</u>

Erna Waterman,
EPR-SR EPA Remedial Project Manager
U.S. Environmental Protection Agency
1595 Wynkoop Street
Denver, CO 80202-1129
waterman.erna@epa.gov

Andrea Madigan, 8ENF-L
Legal Enforcement Program, Mail Code 8ENF-L
U.S. Environmental Protection Agency
1595 Wynkoop Street Denver, CO 80202-1129
moores.steven@epa.gov

<u>As to the EPA Regional Financial Management Officer:</u>

Chief Financial Officer, 8TMS-F
U.S. Environmental Protection Agency
1595 Wynkoop Street
Denver, CO 80202-1129

<u>As to Settling Defendant:</u>

Thoro Products Company
c/o Christopher J. Sutton, Esq.
Perkins Coie, LLP
1900 Sixteenth Street, Suite 1400
Denver, CO 80202
csutton@perkinscoie.com

Richard Newman, President
Thoro Products Company
P.O. Box 44
Rollinsville, CO 80474

## XVIII.        <u>RETENTION OF JURISDICTION</u>

39.  This Court shall retain jurisdiction over this matter for the purpose of interpreting

and enforcing the terms of this Consent Decree.  Nothing in this Decree shall be deemed to alter

the Court's power to enforce, supervise or approve modifications to this Consent Decree.

36758-0002/LEGAL29581397.3

## XIX.   INTEGRATION/APPENDICES

40.  This Consent Decree and its appendices constitute the final, complete and exclusive agreement and understanding between the Parties with respect to the settlement embodied in this Consent Decree.  The Parties acknowledge that there are no representations, agreements or understandings relating to the settlement other than those expressly contained in this Consent Decree and its appendices.  The following appendices are attached to and incorporated into this Consent Decree: "Appendix A" is the map of the Site; "Appendix B" is a list of the financial information submitted to EPA by Settling Defendant; "Appendix C" is Insurance Information submitted to EPA by Settling Defendant.  "Appendix D" is the Environmental Covenant.

## XX.   LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

41.  This Consent Decree shall be lodged with the Court for a period of not fewer than 30 days for public notice and comment.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations which indicate that this Consent Decree is inappropriate, improper, or inadequate. Settling Defendant consents to the entry of this Consent Decree without further notice.

42.  If for any reason this Court should decline to approve this Consent Decree in the form presented, this Consent Decree is voidable at the sole discretion of any party and the terms of the Consent Decree may not be used as evidence in any litigation between the Parties.

## XXI.   SIGNATORIES/SERVICE

43.  Each undersigned representative of Settling Defendant to this Consent Decree and the Chief/Deputy Chief, Environmental Enforcement Section of the United States Department of Justice certifies that he or she is authorized to enter into the terms and conditions of this Consent

25

Decree and to execute and bind legally such Party to this document.

44.  Settling Defendant hereby agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree, unless the United States has notified Settling Defendant in writing that it no longer supports entry of the Consent Decree.

45.  Settling Defendant shall identify, on the attached signature page, the name and address of an agent who is authorized to accept service of process by mail on its behalf with respect to all matters arising under or relating to this Consent Decree.  Settling Defendant hereby agrees to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including but not limited to, service of a summons.  The Parties agree that Settling Defendant need not file an answer to the complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

## XXII.  FINAL JUDGMENT

46.  Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute the final judgment between the United States and Settling Defendant.  The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

SO ORDERED THIS 14th DAY OF August , 2014.

Robert E. Blackburn

UNITED STATES DISTRICT JUDGE

26

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States v. Thoro Products Company*, relating to the Twins Inn Superfund Site.

FOR THE UNITED STATES OF AMERICA

Date: _____

_____
Nathaniel Douglas
Deputy Section Chief
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611


/s/ Elliot Rockler
_____
Elliot M. Rockler
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
(202) 514-2653
elliot.rockler@usdoj.gov


_____
Andrea Madigan
Supervising Attorney
U.S. Environmental Protection Agency
1595 Wynkoop Street
Denver, Colorado 80202, 1129

27

Kelcey Land     A+t,
Director
Technical Enforcement Program
U.S. Environmental Protection Agency
1595 Wynkoop Street
Denver, Colorado 80202-1129

Bill Murray
Director
Superfund Program
U.S. Environmental Protection Agency
1595 Wynkoop Street
Denver, Colorado 80202-1129

28

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States v. Thoro Products Company*, relating to the Twins Inn Superfund Site.

## FOR DEFENDANT THORO PRODUCTS COMPANY

Date: 3/18/14

_____
[Names and addresses of Defendant's signatories]

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name:     Christopher J. Sutton

Title:    Partner

Address:  Perkins Coie LLP

          1900 16th Street, Suite 1400

          Denver, CO 80202

29

**APPENDIX A**

**Site Map**



## APPENDIX B

### Financial Information

1.  Financial Statement of Corporate Debtor

2.  U.S. Corporation Income Tax Return 2009

3.  U.S. Corporation Income Tax Return 2010

4.  U.S. Corporation Income Tax Return 2011

5.  U.S. Corporation Income Tax Return 2012

6.  U.S. Corporation Income Tax Return 2013

**APPENDIX C**

**Insurance Information**

| Name of Insurance Carrier | Policy Dates |
|---|---|
| Reliance Ins. Company<br>United Pacific Ins. Company | 01/30/1975-01/30/1978 |
| Name Unknown (document unreadable) | 06/20/1975-06/20/1976 |
| Lincoln Insurance | 01/09/1977-01/09/1983 |
| Guarantee Insurance | 03/06/1980-03/06/1983 |
| Mission National Insurance | 11/23/1982-01/09/1984 |
| National Union Fire Ins. Company | 01/09/1983-02/09/1986 |
| Republic Ins. Co. | 01/09/1985-01/09/1986 |
| Lexington Insurance | 03/18/1986-03/18/1987 |
| Insurance Co. of America | 04/21/1988-04/21/1989 |
| Colony Insurance | 04/21/1989-04/21/1997* |

\* No insurance policy was located for the period from 04/21/1994-04/20/1995.

**APPENDIX D**

**Environmental Covenant**

**This Property is subject to an Environmental Covenant held by the Colorado Department of Public Health and Environment pursuant to Section 25-15-321, Colorado Revised Statutes**

## Environmental Covenant

Thoro Products Company grants an Environmental Covenant ("Covenant") this _____ day of _____, 20 ___ to the U.S. Environmental Protection Agency ("EPA") and to the Hazardous Materials and Waste Management Division of the Colorado Department of Public Health and the Environment ("CDPHE" or "the Department"), pursuant to the Colorado Hazardous Waste Act, § 25-15-101, *et seq.*, C.R.S., including § 25-15-321, C.R.S., and to EPA as a third party beneficiary.

WHEREAS, Thoro Products Company (also referred to herein as "Thoro" or "Owner") represents and warrants that, at the time of execution of this Covenant, it is the current and sole Owner of the property located at 6611 West 58th Place, Arvada, Colorado 80003, whose legal description is included as Exhibit A to this Covenant (the "Property"). Owner has authority to execute and record this Covenant; and

WHEREAS, pursuant to the Amended Action Memorandum issued by the U.S. Environmental Protection Agency ("EPA") on November 9, 2011, the Property is subject to a removal action under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601, *et seq.* ("CERCLA"); and

WHEREAS, as provided in the Consent Decree ("Consent Decree") entered into between the United States of America and Thoro in Civil Action No. 10-cv-____-RPM, *United States of America v. Thoro Products Company* on _____ 20___, Thoro agreed to record this Covenant; and

WHEREAS, the purpose of this Covenant is intended to: (1) satisfy, in part, Thoro's obligations under the Consent Decree, and (2) meet the criteria for removal actions identified in CERCLA § 101(23), 42 U.S.C. § 9601(23), and 40 CFR § 300.1, *et seq.*, as those criteria are set forth in the EPA Removal Action Documents, by: (a) prohibiting certain uses of the Property until levels of hazardous substances at the Property have been reduced to levels protective of human health and the environment, consistent with the Removal Action Documents and any statements of work produced pursuant thereto, and (b) providing access to the Property for EPA, the Department, their respective representatives, and any person or entity conducting work pursuant to the Removal Action Documents, for the purpose of sampling, maintaining, or removing monitoring wells; and (c) providing access to persons or entities entitled to enforce this Covenant for the purpose of determining compliance with this Covenant; and

1

36758-0002/LEGAL29676839.2

**WHEREAS,** Thoro desires to subject the Property to certain covenants and restrictions as provided in Article 15 of Title 25, Colorado Revised Statutes (C.R.S.), which shall burden the Property and bind Thoro Products Company and all parties having any right, title or interest in the Property, or any part thereof, their heirs, successors and assigns, and any persons using the land, as described herein, for the benefit of EPA and the Department.

**NOW, THEREFORE:** Thoro Products Company hereby grants this Covenant under § 25-15-321, C.R.S. to the EPA the Department, and to the EPA as a third party beneficiary, and declares that the Property as described in Attachment A shall hereinafter be bound by, held, sold, and conveyed subject to the following requirements set forth below, which shall run with the Property in perpetuity and be binding on Thoro and all parties now or subsequently having any right, title or interest in the Property, or any part thereof, and any persons using the land, as described herein.

## DEFINITIONS

"**Agricultural Use**" shall mean any type of farming or process that is intended to produce food, feed, fiber and other products for human consumption by growing on the land surface or grazing on the Property through the cultivation of plants and/or the raising or caring for domesticated animals (livestock, including but not limited to horses, sheep, or cows). Agricultural Uses shall include the manufacturing, processing or sale of agricultural products, including livestock, unless those products were not grown on the land surface or grazed on the Property.

"**CERCLA**" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601, *et seq.*

"**Department**" shall mean the Colorado Department of Public Health and Environment and any successor department of the State of Colorado. The Department's address is 4300 Cherry Creek Drive South, Denver, Colorado 80246-1530.

"**EPA**" shall mean the United States Environmental Protection Agency and any successor departments, agencies or instrumentalities of the United States.

"**Excavation**" shall mean any disturbance of or boring into the surface or the subsurface of the Property that results in movement or removal of soils or any material, soil, earth, rock, or other substance on the Property. This definition is not intended to and does not supersede any applicable federal, state, or local statutes or regulations governing environmental matters or worker safety and protection.

"**Owner**" shall mean the record owner of the Property and any party having any right, title or interest in the Property, or any part thereof, their successors and assigns, and any other person or entity otherwise legally authorized to make decisions regarding the transfer of the Property or placement of encumbrances on the Property, other than by the exercise of eminent

2

36758-0002/LEGAL29676839.2

domain. Owner shall also mean any transferee or grantee of the Property or any interest in the Property.

**"Property"** shall mean the land, improvements, and appurtenances located at 6611 West 58th Place, Arvada, Colorado (hereinafter referred to as "the Property"), according to the recorded plat thereof, in Jefferson County, Colorado, and as described in Attachment A.

**"Removal Action Documents"** shall mean the September, 1999, Ecological and Human Health Risk Assessment, the November, 2005, Baseline Indoor Air Sampling Results and Indoor Air Mitigation Plan, the May, 2006, Human Health Risk Assessment, the August 1, 2010, Engineering Evaluation Cost Analysis conducted by URS Corporation, EPA's June 19, 1995, Action Memorandum, EPA's December 18, 2008, Action Memorandum, and EPA's November 9, 2011 Amended Action Memorandum, any work documents produced under the Amended Action Memorandum, and any modifications made thereto. The Removal Action Documents are available at the EPA's Superfund Record Center, 1595 Wynkoop, Denver, CO 80202-1129.

**"Removal Actions"** shall mean the CERCLA removal actions referenced in the Removal Action Documents.

**"Site"** shall mean the Twins Inn Superfund Site, encompassing approximately 20 acres located in the City of Arvada, Colorado, Jefferson County, approximately ten (10) miles northwest of downtown Denver, Colorado, depicted more specifically on Exhibit B attached hereto, and includes the contiguous adjacent areas where hazardous substances have come to be located.

**"Structures"** shall include, but not be limited to, any buildings, concrete footings, foundations, loading docks, retaining walls, pads, sumps, surface impoundments, storm water retention ponds, catch basins, tanks or other structures currently present on, or which may be installed on, the Property.

**"Thoro"** shall mean Thoro Products Company and its successors and assigns.

## ENVIRONMENTAL USE RESTRICTIONS

1. **Prohibition on Agricultural and Residential Use:** Owner shall not allow, permit or construct any Agricultural Use on the Property or any residential use, including, but not limited to any day care facilities, single family or multi-family residential Structures at the Property or allow any playgrounds, parks or recreational facilities for children, schools daycare centers (whether independent or ancillary to a permitted use) or community centers with outdoor uses, at the Property.

2. **Prohibition on Use of Water and Well Construction.** Owner shall not use or permit any person to use the shallow alluvial groundwater under the Property or allow such waters to be developed for any purpose, except as consistent with the Removal Action Documents, or as

3

allowed by EPA or the Department. Owner shall not, nor shall owner allow, any person to dig, bore or drill or install any well for the production of water or from which water is produced on the Property, or allow any of the same, except as allowed by EPA or the Department.

3. **Prohibition on Use of Surface Water**: Except as authorized by State and federal law, including environmental laws, Owner shall not develop or permit the development of any surface water source on the Property for the production of water.

4. **Foundation Venting or Vapor Barrier**. Owner shall not permit the construction of any new Structures intended for human occupation (e.g., an office space) on the Property without installation and operation of a foundation venting system acceptable to a State of Colorado licensed Professional Engineer that is designed to limit or preclude the presence of airborne contaminants within the structure, building or enclosed space in excess of the applicable worker action levels shown in the CDPHE, Hazardous Materials and Waste Management Division Air Screening Concentration Table Values (the "Table Values") in effect at the time of construction. If Owner renovates the existing buildings for human occupancy, Owner shall confirm through indoor air testing that airborne contaminants within the building are not in excess of the worker action levels shown in the Table Values for contaminants of concern. If airborne contaminants exceed Table Values, Owner shall install and operate a foundation venting system acceptable to a State of Colorado licensed Professional Engineer that is designed to limit or preclude the presence of airborne contaminants within the structure, building or enclosed space in excess of Table Values.

5. **Protection of the Integrity of Removal Actions**. No person shall make use of the Property or undertake, perform or otherwise cause to occur, any activities that unreasonably interferes with the installation, operation, and/or maintenance of monitoring wells on the property, or of any building vapor mitigation system except as allowed by EPA or the Department.

6. **Limitations on Excavation.** Owner shall not allow, permit or construct any Excavation below or into groundwater or saturated soil (soils at or below the static water table and that are visibly moist and/or which feel moist) in or under the Property, unless:

    (a) Owner informs the EPA and the Department by providing each agency with a copy of Owner's Excavation plan at least thirty (30) days before beginning any proposed Excavation;

    (b) The EPA has approved Owner's Excavation plan;

    (c) Prior to an Excavation into groundwater or saturated soil, Owner provides the EPA and the Department at least 72 hours advanced notice and an opportunity to observe the Excavation for which notice is given; and

    (d) Such Excavation is performed in a manner that fully complies with all applicable federal, state and local laws, which may include the Colorado Hazardous Waste Act, CRS

4

25-15-301, *et seq.*, regulations promulgated by the Colorado State Hazardous Waste Program and standards set by the Occupational Safety and Health Administration (OSHA) under regulation 1910.120, including the use of appropriate personal protective equipment ("PPE"), to minimize worker exposure to contaminants of concern.

7. **Entry and Inspections**:

(a) The Department and EPA and their authorized representatives shall have the right of entry to the Property at reasonable times with prior notice for the purpose of determining compliance with the terms of this Covenant. Nothing in this Covenant shall modify or impair any other authority the EPA and the Department may otherwise have to enter and inspect the Property.

(b) The Department, EPA, their authorized representatives, and any person or entity acting at the direction of EPA or the Department shall have the right of entry to the Property at reasonable times, with prior notice, for the purpose of implementing EPA's CERCLA response actions (e.g. monitoring wells) under the Removal Action Documents. Nothing in this Covenant shall modify or impair any other authority the EPA and the Department may otherwise have to enter and inspect the Property.

## MODIFICATION OR TERMINATION OF ENVIRONMENTAL COVENANT

8. This Covenant runs with the land and is perpetual, unless so modified or terminated as described herein. Owner may request that EPA and the Department approve a modification or termination of this Covenant. A request for modification or termination shall include information showing that the proposed modification or termination shall, if implemented, ensure protection of human health and the environment, considering the intended use of the Property (i.e., industrial use) and any other applicable factors. The Department and EPA shall review any submitted information and may request additional information. If the Department and EPA determine that the proposal to modify or terminate this Covenant will protect human health and the environment considering the intended use of the Property and other applicable factors, they shall approve the proposal. No modification or termination of this Covenant shall be effective unless the Owner, the Department and EPA have approved such modification or termination in writing. Information to support a request for modification or termination may include one or more the following:

(a) a proposal to perform additional remedial work;

(b) new information regarding the risks posed by the residual contamination;

(c) information demonstrating that residual contamination has diminished;

5

(d)  information demonstrating that the proposed modification is protective of human health and the environment from the release of hazardous substances indentified in the Removal Action Documents; or

(e)  other appropriate supporting information.

9.  **Required Approvals**.  The Department and EPA shall promptly review all applications for modifying or terminating this Covenant after receipt of an application.  Any proposed modifications must be approved in writing and executed by, (a) the Owner  (b) the Department and (c) the EPA.  Such written approval shall be evidenced by execution of a written instrument created to amend this Covenant and duly recorded in the real property records of the county in which the Property is located..

10.  **Appeal**.  Any determination made by EPA and the Department on a request from the Owner to modify or terminate this Covenant may be subject to appeal in accordance with Section 25-15-305(2), C.R.S. (2001), as amended.

**ENFORCEMENT**

11.  **Violations**:  In addition to any remedies available under the consent decree, the Owner, the EPA, the Department, or any affected local government, or any affected local government may enforce the terms of this Covenant pursuant to §25-15-322 C.R.S.  Nothing in this Covenant is intended to require, or does require Owner to initiate an action to enforce the terms of this Covenant against third parties.

**CONVEYANCE/SUBSEQUENT OWNERS**

12.  **Notice of Conveyance**.  Owner shall notify the Department and EPA at least fifteen (15) days in advance of any proposed grant, transfer or conveyance of any interest (including leasehold interests) in any part or all of the Property.  Owner agrees to include, in full or by reference, in any instrument conveying any interest in any portion of the Property or granting a right to use the Property, including but not limited to deeds, leases, licenses and mortgages, a notice in the following form:

NOTICE:

THE   INTEREST   CONVEYED   HEREBY   IS   SUBJECT   TO   AN ENVIRONMENTAL COVENANT, DATED_____, 20__, RECORDED IN THE PUBLIC LAND RECORDS OF JEFFERSON COUNTY ON, _____, ___ 20__, IN BOOK _____, PAGE _____, RECEPTION NO._____. "OWNER" AS DEFINED IN THIS ENVIRONMENTAL COVENANT AGREES TO BE SUBJECT TO THIS ENVIRONMENTAL COVENANT AND THE INSTITUTIONAL CONTROLS PROVISIONS OF THE CONSENT DECREE IN Civil Action No. _____ -_____, *United States of America v. Thoro Products*

6

36758-0002/LEGAL29676839.2

*Company,* AND ACKNOWLEDGES THAT THIS ENVIRONMENTAL COVENANT AND THESE INSTITUTIONAL CONTROLS MAY BE ENFORCED AGAINST THE OWNER BY THE UNITED STATES UNDER THE TERMS OF THE CONSENT DECREE IN THE ABOVE-REFERENCED CIVIL ACTION OR BY THE COLORADO DEPARTMENT OF PUBLIC HEALTH AND ENVIRONMENT, THE UNITED STATES, ANY AFFECTED LOCAL GOVERNMENT, AND THORO PRODUCTS COMPANY PURSUANT TO §25-15-322 C.R.S.

13. **Copies:** Within thirty (30) days of the date any instrument of conveyance of the Property is executed, Owner shall provide the Department and EPA with a certified true copy of said conveyance instrument and the notice required by section 12 above; as well as the recording reference in the public land records.

14. **Notification of Proposed Change in Land Use:** In addition to the notification provided or in section 5(a), above, Owner shall notify the Department and EPA simultaneously when submitting any application to a local government for a change in land use or building permit, which review under this Covenant shall be limited to a determination by EPA and the Department that the proposed change in land use is not inconsistent with the Use Restrictions in this Covenant or the CERCLA Removal Actions set forth in the Removal Action Documents.

## THIRD PARTY BENEFICIARIES

15. **Third Party Beneficiaries.**

(a) The Owner of the Property is a third party beneficiary under § 25-15-322, C.R.S. with the right to enforce the provisions of this Covenant, and any named beneficiaries of this Covenant may file suit in district court to enjoin actual or threatened violations of this Covenant.

(b) The United States Environmental Protection Agency is a third party beneficiary under § 25-15-322, C.R.S. with the right to enforce the provisions of this Covenant and by virtue of being named in this Covenant, and as a condition of settlement of Civil Action No. _____, *United States of America v. Thoro Products Company*, and the Consent Decree entered therein, and the United States may file suit in district court to enjoin actual or threatened violations of this Covenant.

7

## MISCELLANEOUS

16. **No Admission of Liability**.  Neither this Covenant nor any of the terms, recitals, provisions or statements contained herein shall be construed as an admission of liability by Owner in any proceeding, action or dispute under any federal, state or local law or regulation or under any common law theory.  Neither the Department, by virtue of accepting this Covenant, nor EPA shall acquire any liability under State law.

17. **Owner's Compliance Certification**: Upon written request by EPA or the Department, Owner shall promptly execute and return an annual certification (in a form attached hereto as Exhibit C) detailing Owner's compliance and any lack of compliance with the terms of this Covenant.

18. **Notice**.  Any document or communication required pursuant to this Environmental Covenant shall be sent or directed to:

Colorado Department of Public Health and Environment
Hazardous Materials and Waste Management Division
4300 Cherry Creek Drive South
Remediation Program
Thoro Twins Inn Superfund Site Project Officer
Denver, CO 80246-1530

and to:

Remedial Project Manager (8EPR-SR)
Twins Inn Superfund Site
U.S. Environmental Protection Agency
1585 Wynkoop Street
Denver, CO 80202-1129

And, for as long as Thoro is the Owner of the Property to:

Thoro Products Company
c/o Richard Newman, President
P.O. Box 44
Rollinsville, CO  80474

8

36758-0002/LEGAL29676839.2

**IN WITNESS WHEREOF,** Thoro Products Company, a Colorado corporation, has caused this instrument to be executed this _____ day of _____, 20___.

**Thoro Products Company**


By:_____
Richard E. Newman, President


STATE OF COLORADO            )
                             ) ss.
COUNTY OF _____)

The foregoing instrument was acknowledged before me this _____ day of _____, 20___, by Richard E. Newman, President of Thoro Products Company, on behalf of the corporation.

Witness my hand and official seal.

My commission expires: _____.

_____
Notary Public

_____

_____
Address

9

## **ATTACHMENTS**

Exhibit A:  Property Description
Exhibit B:  Site Map
Exhibit C:  Owner's Compliance Certification

10

Accepted by the Colorado Department of Public Health and Environment this _____ day of _____, 20__.

By:_____

Title:_____

STATE OF COLORADO    )
                               ) ss.
COUNTY OF _____)

The foregoing instrument was acknowledged before me this ___ day of _____, _____ by _____ on behalf of the Colorado Department of Public Health and Environment.

Notary Public

Address

My commission expires:

11

36758-0002/LEGAL29676839.2

**EXHIBIT A**

**Property Description**

General Legal Description of the Land

Property Address: 6611 W. 58th Place, Arvada, CO 80003, located in Jefferson County, Colorado, Parcel ID: 39-123-00-097; Key 274, Section 12, Township 3, Range 69, Quarter Section SW comprising of 29,795 square feet.

**EXHIBIT B**

**Site Map**



Figure 1-2   EXTENT OF TWINS INN SITE
APRIL 2001

**EXHIBIT C**

**Owner's Compliance Certification**

## OWNER COMPLIANCE CERTIFICATION

This certification of compliance is provided by Owner, _____
_____, ("OWNER") of the property located at 6611 W. 58th Place, Arvada, CO, pursuant to the terms of the Environmental Covenant ("Covenant") dated _____, 20____, recorded in the public land records of Jefferson County on _____, 2014, Reception No._____.

OWNER as defined in the Covenant, certifies to the best of its knowledge and belief that for the period from _____ to and including the date of this Certification set for below, and except as set forth herein, OWNER has been and is in compliance with the terms of this Covenant. OWNER's lack of compliance with the Covenant for the period from _____ to and including the date of this Certification is as follows:

_____
_____
_____

OWNER's certification of compliance does not extend to and is made independent of the actions of third parties unrelated to OWNER, including but not limited to trespassers, invitees, tenants, and third parties unrelated to OWNER with access to or easements across the Property, as that term is defined in the Covenant.

OWNER's certification of compliance is made to the best of OWNER's knowledge and belief after reasonable inquiry. Owner is aware that there are significant penalties for submitting a false certification, including the possibility of a fine and imprisonment for making knowing false statements.

OWNER

By:_____

Its:_____

Date: _____